# United States Court of Appeals for the Federal Circuit

———————————

**RIDGE CORP., COLD CHAIN, LLC,**
*Plaintiffs-Appellees*

**v.**

**KIRK NATIONALEASE CO., TRUCK & TRAILER PARTS SOLUTIONS, INC., ALTUM LLC,**
*Defendants-Appellants*

———————————

2025-1254

———————————

Appeal from the United States District Court for the Southern District of Ohio in No. 2:23-cv-03012-ALM-KAJ, Judge Algenon L. Marbley.

———————————

Decided: July 13, 2026

———————————

CHRISTOPHER WARREN TACKETT, Bailey Cavalieri LLC, Columbus, OH, argued for plaintiffs-appellees. Also represented by GRAYCEN WOOD HILL, Baker & Hostetler LLP, Columbus, OH.

MELISSA L. WATT, Faruki PLL, Cincinnati, OH, argued for defendants-appellants Kirk NationaLease Co., Truck & Trailer Parts Solutions, Inc. Also represented by JOSHUA A. KOLTAK, MICHAEL SCARPELLI, FGKS Law, Sidney, OH.

TIFFANY L. CARWILE, Kohrman Jackson & Krantz LLP,

Columbus, OH, argued for defendant-appellant Altum LLC.  Also represented by DAMION M. CLIFFORD, MICHAEL LEE DILLARD, JR., GERHARDT A. GOSNELL, II, Arnold & Clifford LLC, Columbus, OH.

_____

Before DYK, MAYER, and TARANTO, *Circuit Judges.*

MAYER, *Circuit Judge.*

Kirk NationaLease Co. ("Kirk"), Altum LLC ("Altum"), and Truck & Trailer Parts Solutions, Inc. ("TTPS") (collectively, the "KNL defendants") appeal an order of the United States District Court for the Southern District of Ohio granting preliminary injunctive relief.  For the reasons discussed below, we reverse and remand.

## I. BACKGROUND

Cold Chain, LLC ("Cold Chain") owns U.S. Patent No. 9,151,084 (the "'084 patent"), which is directed "to an insulated overhead door." '084 patent, col. 1 l. 9–10.  Claim 1 of the '084 patent recites:

> An insulated overhead door that is designed to roll open and closed in tracks to cover a door opening having a top and a bottom, the insulating overhead door having a first outermost surface, a second outermost surface opposite the first outermost surface, a top surface, a bottom surface, a first side surface and a second side surface, both the first outermost surface and the second outermost surface being larger than any of the top surface, bottom surface, first side surface and second side surface, the door comprising:
>
>> a thermoplastic membrane comprising glass fibers and having a top side corresponding to the top of the door opening and a bottom side corresponding to the bottom of the door opening, the thermoplastic

membrane forming the first outermost surface of the door;

a sheet of foam insulating material directly attached to the thermoplastic membrane, the insulating material extending continuously from the top side to the bottom side of the thermoplastic membrane, the thermoplastic membrane and insulating material forming a panel that is approximately the size of the door opening to be covered, a length of the panel being the distance between the top side and the bottom side, the foam insulating material forming the second outermost surface of the door; and

wheels attached to the door allowing the door to fit into tracks to guide the opening and closing of the door,

wherein the overhead door comprises only one of the panel, the panel being flexible along the entire length of the panel so as to be capable of approximating the curvature of curved tracks having a radius of curvature ranging from about 5 inches to about 25 inches, where the track has a first length positioned at an angle, $\Theta$, relative to a track portion of a second length, wherein $\Theta$ ranges from about 80° to about 125°.

*Id.* at col. 6 ll. 18–51.

In February 2023, Ridge Corporation ("Ridge") became the exclusive licensee of the '084 patent. *See* Compl. ¶ 18 (Dkt. No. 1)[1]; *see also Ridge Corp. v. Kirk Nat'l Lease Co.*,

---

[1] All references to "Dkt. No." herein refer to entries in the underlying district court docket.

No. 2:23-CV-03012, 2023 WL 7271276, at *3 (S.D. Ohio Nov. 3, 2023) ("*First Preliminary Injunction Order*"), *opinion clarified*, No. 2:23-CV-03012, 2024 WL 1836679 (S.D. Ohio Jan. 5, 2024), *vacated and remanded*, No. 2024-1138, 2024 WL 3617130 (Fed. Cir. Aug. 1, 2024) ("*Federal Circuit Decision*"). On September 20, 2023, Ridge filed a complaint alleging: (1) infringement by Kirk and TTPS of claims 1, 12, and 17 of the '084 patent; (2) patent inducement and contributory infringement by Altum; (3) tortious interference with business relationships by the KNL defendants; and (4) false marking by Kirk and TTPS. *See* Compl. ¶¶ 84–120 (Dkt. No. 1). Ridge's state law tortious interference claim was based upon a letter that Kirk's patent counsel sent to Whiting Door Manufacturing Corporation ("Whiting Door"), asserting that Whiting Door could be liable for royalty damages for manufacturing a single-panel roll-up door with Ridge. *See* Compl. ¶¶ 78–83, 110–15 (Dkt. No. 1); *First Preliminary Injunction Order*, 2023 WL 7271276, at *11; J.A. 918–19. Ridge's false patent marking claim was based on its contention that TTPS falsely advertised to prospective customers that the accused door was patented. *See* Compl. ¶¶ 57–65, 116–20; (Dkt. No. 1); *see also First Preliminary Injunction Order*, 2023 WL 7271276, at *12.

The district court thereafter granted Ridge's motion for a preliminary injunction, enjoining the KNL defendants from: (1) continuing to manufacture, advertise for sale, sell, or further contract to sell the accused door or any other door that infringes the '084 patent; (2) inducing any other person or entity to manufacture, advertise for sale, or sell the accused door or any other infringing door; (3) contributing to the manufacture, advertisement for sale, or selling of the accused door or any other infringing door; or (4) tortiously interfering with Ridge's business relationships by making false claims related to the accused door, including "falsely asserting that any aspect of the [accused] [d]oor is 'patented.'" *First Preliminary Injunction Order*, 2023 WL

7271276, at *16; J.A. 785.  On appeal, this court vacated the preliminary injunction.  *See Federal Circuit Decision*, 2024 WL 3617130, at *6.  We held "that Ridge d[id] not meet the statutory requirement of being a patentee under 35 U.S.C. § 281 because Ridge [was] not an exclusive licensee with all substantial rights in the '084 patent." *Id.* at *4. In light of our conclusion that Ridge lacked standing to sue for infringement, we did not reach the parties' arguments regarding the proper construction of disputed claim terms. *Id.* at *5.

Ridge subsequently filed an amended complaint that added Cold Chain as a plaintiff.  *See* Amended Compl. ¶ 2; (Dkt. No. 106); *see also Ridge Corp. v. Kirk Nat'l Lease Co.*, No. 2:23-CV-03012, 2024 WL 4817434, at *4 (S.D. Ohio Nov. 18, 2024) ("*Second Preliminary Injunction Order*").  In November 2024, the district court granted the renewed motion filed by Ridge and Cold Chain (collectively, the "Ridge plaintiffs") for a preliminary injunction, concluding that they had established a strong likelihood of success on the merits of their claims.[2]  *See Second Preliminary Injunction Order*, 2024 WL 4817434, at *5–13.  Although the KNL defendants argued that the Ridge plaintiffs could not establish that the accused door infringed under a proper construction of disputed claim terms, the district court rejected this argument, holding that the term "insulating," '084 patent, col. 6 l. 18, did not require a particular R-value[3] or a particular level of insulation.  *See Second Preliminary Injunction Order*, 2024 WL 4817434, at *7–8.  The

---

[2]    The second preliminary injunction prohibited the same conduct as the first preliminary injunction.  *See Second Preliminary Injunction Order*, 2024 WL 4817434, at *4, *16.

[3]    Evidence presented to the district court indicated that the term "R-value" refers to a material's "ability to resist conductive heat flow."  J.A. 1484.

court further determined that the limitation requiring that "foam insulating material form[] the second outermost surface of the door," '084 patent, col. 6 ll. 39–41, did not exclude a panel made from a layer of foam sandwiched between two thermoplastic membranes, *Second Preliminary Injunction Order*, 2024 WL 4817434, at *8, and that the limitation requiring that the panel be "flexible along [its] entire length . . . so as to be capable of approximating the curvature of curved tracks," '084 patent, col. 6 ll. 45–47, did not require a panel that was "innately flexible," *Second Preliminary Injunction Order*, 2024 WL 4817434, at *11 (citation and internal quotation marks omitted).

The court also concluded that Ridge had "established a strong likelihood that it would be successful on the merits of its false marking claim." *Id.* at *9. Additionally, the court determined that a factor weighing in favor of a preliminary injunction was that "all elements of tortious interference with a business relationship ha[d] been satisfied with respect to [Kirk] and TTPS." *Id.* at *13.

This appeal followed. We have jurisdiction under 28 U.S.C. § 1292(c)(1).

## II. DISCUSSION

### A.

We review the grant or denial of a preliminary injunction under the law of the appropriate regional circuit, here the Sixth Circuit. *See Murata Mach. USA v. Daifuku Co.*, 830 F.3d 1357, 1363 (Fed. Cir. 2016). In the Sixth Circuit, while "[a] movant's likelihood of success on the merits is a question of law reviewed de novo," an abuse of discretion standard applies to "the district court's ultimate conclusion as to whether the preliminary injunction factors weigh in favor of granting or denying preliminary injunctive relief." *Wilson v. Williams*, 961 F.3d 829, 837 (6th Cir. 2020).

This court "has itself built a body of precedent applying the general preliminary injunction considerations to a

large number of factually variant patent cases, and gives dominant effect to Federal Circuit precedent insofar as it reflects considerations specific to patent issues." *FMC Corp. v. Sharda USA, LLC*, 145 F.4th 1326, 1330 (Fed. Cir. 2025) (citation and internal quotation marks omitted). Accordingly, "[i]n reviewing the grant or denial of a preliminary injunction, the estimated likelihood of success in establishing infringement is governed by Federal Circuit law." *ABC Corp. I v. P'ship & Unincorporated Ass'ns Identified on Schedule "A"*, 52 F.4th 934, 941 (Fed. Cir. 2022) (citation and internal quotation marks omitted).

B.

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A court can grant such relief only where a plaintiff can "establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id.* at 20. If an accused infringer "raises a substantial question concerning . . . infringement . . ., *i.e.*, asserts an infringement . . . defense that the patentee cannot prove lacks substantial merit, the preliminary injunction should not issue." *ABC Corp. I*, 52 F.4th at 942 (citations and internal quotation marks omitted) (ellipses in original); *see Regeneron Pharms., Inc. v. Mylan Pharms. Inc.*, 130 F.4th 1372, 1384 (Fed. Cir. 2025).

"We generally give claim terms their plain and ordinary meaning, which is the meaning that a skilled artisan would ascribe when reading the term in context of the claim, specification, and prosecution history." *FMC Corp.*, 145 F.4th at 1331. Here, we conclude that the district court erred in granting preliminary injunctive relief because the KNL defendants established that, under the proper construction of three separate claim limitations, there is a substantial question regarding whether the Ridge plaintiffs

can succeed on the merits of their infringement action. *See Regeneron Pharms.*, 130 F.4th at 1384 (affirming the denial of a preliminary injunction where, under the correct construction of a disputed claim limitation, "there [was] at least a substantial question of noninfringement").

C.

We turn first to the claim limitation requiring that the overhead door include a "panel being *flexible along the entire length of the panel* so as to be capable of approximating the curvature of curved tracks." '084 patent, col. 6 ll. 45–47 (emphasis added). Altum, a composites manufacturer, sells a panel to TTPS for use in manufacturing a roll-up door that is marketed and sold by Kirk and TTPS. *See* Amended Compl. ¶¶ 12, 39, 43, 103 (Dkt. No. 106); J.A. 758. The product Altum sells to TTPS is a "sandwich" panel, meaning that it has two outer thermoplastic membranes attached to a middle layer of foam. J.A. 758, 1333; *see also Second Preliminary Injunction Order*, 2024 WL 4817434, at *8–12. On appeal, the Ridge plaintiffs do not meaningfully dispute that the panel manufactured by Altum is rigid and inflexible and cannot traverse a curved track without modifications. *See* Amended Compl. ¶ 47 (Dkt. No. 106); J.A. 1494; *see also* Br. of Plaintiffs-Appellees 3, 31.

After receiving the sandwich panel from Altum, TTPS modifies it to create a door that can traverse a curved track by routing horizontal grooves, or compression gaps, into the panel. J.A. 758; *see* Amended Compl. ¶ 47 (Dkt. No. 106). We conclude, however, that although these compression gaps allow the panel to move along a curved track, the Ridge plaintiffs are unlikely, based upon the record compiled at this point in the proceedings, to succeed in establishing that the accused door has a panel that is "flexible along [its] *entire* length," '084 patent, col. 6 l. 45 (emphasis added). This is because, notwithstanding that compression gaps have been routed into certain areas of

the panel, the sections of the panel without such compression gaps remain rigid and inflexible.

On appeal, the Ridge plaintiffs argue that the claim language requiring a panel that is "flexible along [its] entire length," *id.*, does not require a panel that is "innately flexible." Br. of Plaintiffs-Appellees 27 (internal quotation marks omitted). Instead, they assert, because claim 1 requires a panel that is "flexible along the entire length of the panel so as to be capable of approximating the curvature of curved tracks," '084 patent, col. 6 ll. 45–47, all that is required is that "the door is capable of approximating curved tracks." Br. of Plaintiffs-Appellees 27.

We do not find this argument persuasive. By its plain terms, the relevant claim language contains two separate requirements: (1) that the panel is "flexible along the entire length of the panel," '084 patent, col. 6 ll. 45–46; and (2) that this flexibility makes the panel "capable of approximating the curvature of curved tracks," *id.* at col. 6 ll. 46–47. The Ridge plaintiffs' proposed interpretation reads the first requirement out of the claims.

The conclusion that claim 1 requires a panel that is flexible along its entire length, rather than a panel which includes alternating flexible and rigid sections, finds strong support in the prosecution history. In discussing the amendment in which it added the "flexible along the entire length" language, Cold Chain stated that "it is clear from the specification that it is *the flexibility of both the thermoplastic membrane and the foam composite* from which the panel is made that allow the panel to flex to traverse the tracks, rather than relying on multiple rigid hinged sections." J.A. 1700 (emphasis added) (diagram numbering omitted). According to Cold Chain, one of ordinary skill in the art would understand that the claimed panel "would exhibit the desired flexibility along its entire length" due to the fact that "*the entire panel is made from . . . flexible material*." J.A. 1700 (emphasis added). Cold

Chain thus made clear during prosecution that, rather than including alternating flexible and inflexible sections, the entire panel of the claimed door is fabricated from flexible material.

At this preliminary stage of the proceedings, we need not conclusively determine whether the Ridge plaintiffs will ultimately be able to establish that the accused door can meet the claim limitation requiring a panel that is "flexible along [its] entire length," '084 patent, col. 6 l. 45. We conclude, however, that the KNL defendants have, at a minimum, shown that there is a substantial question regarding whether the accused door can satisfy a claim limitation requiring a panel that is "flexible along [its] entire length."

## D.

The KNL defendants also raise a substantial question regarding whether the accused door can meet the claim limitation requiring that "foam insulating material form[] the second outermost surface of the door." '084 patent, col. 6 ll. 39–41. By its plain terms, claim 1 requires an overhead door in which: (1) "the first outermost surface of the door" is "form[ed]" by a "thermoplastic membrane," *id.* at col. 6 ll. 30–31; (2) "a sheet of foam insulating material [is] directly attached to the thermoplastic membrane," *id.* at col. 6 ll. 32–33; and (3) "the second outermost surface of the door" is "form[ed]" from "foam insulating material," *id.* at col. 6 ll. 39–41.

As discussed previously, the accused door has a "sandwich" construction—consisting of two thermoplastic layers surrounding a layer of foam. According to the KNL defendants, the Ridge plaintiffs are unlikely to succeed in showing that the accused door has an "outermost surface" that is "form[ed]" from "foam insulating material," *id.* at col. 6 ll. 39–40, because the plain and ordinary meaning of "outermost" is "farthest out," and in the accused door, both

outermost, *i.e.*, farthest out, surfaces consist of thermoplastic membranes rather than foam insulating material. *See* Br. of Defendants-Appellants Kirk and TTPS 10 (arguing that the accused door does not have a foam "outermost surface" as claim 1 requires because it has a "sandwich construction [in which] the foam is the middle layer—the ice cream, so to speak, in an ice cream sandwich—not an outermost surface").

We agree. We see nothing in the specification or prosecution history suggesting that the claim language does not mean what it says when it requires a "second outermost surface" which is "form[ed]" from "foam insulating material," '084 patent, col. 6 ll. 39–41. To the contrary, during prosecution Cold Chain distinguished its claimed invention from the single-panel overhead door disclosed in U.S. Patent No. 5,915,445 ("Rauenbusch"), which has a "core member" that is "sandwich[ed] . . . between a pair of plastic outer face layers." J.A. 1643. Cold Chain stated that "[t]he sandwich structures of Rauenbusch are not the same as [the] claimed structure" because "the Rauenbusch sandwich structures *do not include a foam insulating material forming the second outermost surface of the door.*" J.A. 1643 (emphasis added). We conclude, therefore, that the KNL defendants have shown that there is a substantial question regarding whether the accused door can meet the claim limitation requiring that "foam insulating material form[] the second outermost surface of the door," '084 patent, col. 6 ll. 39–41.

On appeal, the Ridge plaintiffs attempt to bring the accused door within the scope of claim 1 by pointing to the language of unasserted dependent claim 9, which adds to the insulated overhead door of claim 1 "an additional membrane that is not the thermoplastic membrane." *Id.* at col. 7 ll. 4–5. According to the Ridge plaintiffs, a "sandwich" panel door like the accused door falls within the scope of claim 1 because dependent claim 9 permits an "optional third membrane." Br. of Plaintiffs-Appellees 32. As

we have previously explained, however, "the language of a dependent claim cannot change the scope of an independent claim whose meaning is clear on its face." *Multilayer Stretch Cling Film Holdings, Inc. v. Berry Plastics Corp.*, 831 F.3d 1350, 1360 (Fed. Cir. 2016); *see also Regents of the Univ. of Cal. v. Dakocytomation Cal. Inc.*, 517 F.3d 1364, 1375 (Fed. Cir. 2008) (emphasizing that the presumption that an independent claim should be construed in view of its dependent claim is a rebuttable one).

We have no warrant, at this juncture, to address whether unasserted dependent claim 9 is invalid. *See, e.g.*, *Multilayer Stretch*, 831 F.3d at 1362 ("A dependent claim that contradicts, rather than narrows, the claim from which it depends is invalid."). Instead, it suffices to conclude only that any semantic uncertainty surrounding claim 9 does not alter our conclusion that there is a substantial question regarding whether the accused door—which contains a panel consisting of two thermoplastic membranes surrounding a layer of foam—can infringe a claim explicitly requiring that "foam insulating material form[]" an "outermost" surface of the door.

E.

We likewise conclude that there is a substantial question regarding whether the accused door is an "insulated overhead door," '084 patent, col. 6 l. 18, as that term is used in claim 1. While it contains no explicit definition of the term, the specification of the '084 patent strongly suggests that an "insulated overhead door" is a door that is suitable for use in cold storage applications. *See, e.g.*, *UTTO Inc. v. Metrotech Corp.*, 119 F.4th 984, 996–97 (Fed. Cir. 2024) (explaining that the specification can "play a central role in arriving at a proper construction" of a disputed claim term).

To start, the specification explains that a purpose of the claimed invention is to improve upon "doors used in the cold storage industry" and identifies prior art "insulated

doors" as doors which are "used . . . for cold storage distribution." '084 patent, col. 2 ll. 12–16 (stating that "[t]he present disclosure addresses some of the current problems with existing overhead door technology, and in particular, the problems associated *with insulated doors used in the cold storage industry, such as on delivery trucks for cold storage distribution*" (emphasis added)). The specification likewise equates an "insulated door" with a door used for cold storage when it states that "[i]n the cold storage distribution industry, insulated doors of various types are used to cover openings between cold areas and warm areas." *Id.* at col. 1 ll. 11–13. The specification further explains that the claimed door has "one or more advantages, such as [a] higher R-value for insulation" and "*reduced heat intrusion into a cooled space.*" *Id.* at col. 2 ll. 32–34 (emphasis added).

The conclusion that the claim term "insulated overhead door," '084 patent, col. 6 l. 18, refers to a door suitable for use with cold storage applications is buttressed by extrinsic evidence related to the industry understanding of the meaning of the term. Mark Schroeder, the expert retained by Kirk and TTPS, testified that in the roll-up door industry there are two different types of doors: dry-freight and insulated. J.A. 1313. He explained that dry-freight doors are those that are used to transport "anything that doesn't need to be kept at a certain temperature." J.A. 1313. Insulated doors, by contrast, are used in the transport of "frozen goods" and "refrigerated goods." J.A. 1313. Thus, according to Schroeder, "[i]n the industry, an insulated roll-up door would be a door that would be used to keep things cold or frozen." J.A. 1327.

While we decline the invitation by the KNL defendants to hold that the claim term "insulated overhead door," '084 patent, col. 6 l. 18, requires a particular R-value or range of R-values, we conclude that the claim language, when viewed in light of the specification and the extrinsic evidence, is most reasonably interpreted to mean a door

with insulating properties that make it suitable for cold storage applications.[4]   Under this interpretation of the claim language, the KNL defendants raise a substantial question regarding whether the accused door can qualify as the claimed "insulated overhead door."[5]

### F.

Because there is a substantial question whether the accused door can meet three separate claim limitations, we conclude that the district court erred in determining that the Ridge plaintiffs had established a likelihood of success on the merits of their infringement action. *See Second Preliminary Injunction Order*, 2024 WL 4817434, at *5–12. We reject, moreover, the court's conclusion that the irreparable injury component of the preliminary injunction calculus was satisfied. *See id.* at *13–14.   Ridge's assertion that it would suffer irreparable harm in the absence of injunctive relief was speculative at best.   *See Koninklijke Philips N.V. v. Thales DIS AIS USA LLC*, 39 F.4th 1377, 1380 (Fed. Cir. 2022) (emphasizing that "speculative harm does not justify the rare and extraordinary relief of a preliminary injunction").

For example, while Ridge alleged that it had been forced to sell its doors at reduced prices because of the alleged infringement by the KNL defendants, it failed to

---

[4]   Claim 1 also requires "a sheet of foam insulating material." '084 patent, col. 6 l. 32.  We assume, but need not conclusively determine, that the term "insulating" should be interpreted similarly to the term "insulated."

[5]   On appeal, Altum asserts that the accused door is not suitable for cold storage transport because the door's foam layer is very thin and the areas of the panel into which grooves have been cut act as a "heat sink."  Br. of Defendant-Appellant Altum 24 (citation and internal quotation marks omitted).

show that there was any causal nexus between sales of the accused doors and the prices Ridge set for its own doors. *See Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 640 (Fed. Cir. 2015) (emphasizing that "[t]he causal nexus requirement ensures that an injunction is only entered against a defendant on account of a harm resulting from the defendant's wrongful conduct, not some other reason"); *see also Takeda Pharms. U.S.A., Inc. v. Mylan Pharms. Inc.*, 967 F.3d 1339, 1349 (Fed. Cir. 2020) (explaining that although this court has "recognized that price erosion and loss of market share may in some cases be irreparable injuries, a bare assertion of irreparable harm is never sufficient to prove such harm or justify the 'extraordinary remedy' of a preliminary injunction" (citation omitted)). As Kirk and TTPS correctly assert, Ridge presented no credible "evidence that [its] reduced-cost or zero-dollar sales [were] connected to [the KNL defendants] in any way or how price erosion will occur from . . . sales [by the KNL defendants] in the future." Reply Br. of Defendants-Appellants Kirk and TTPS 11. In this regard, they note that before the district court first granted injunctive relief in 2023, "Ridge had not sold ANY single panel roll-up doors," and that after the first preliminary injunction issued, "Ridge had the field to itself for a full year, so [the KNL defendants] could not have been eroding the price [of Ridge's doors] at that time." *Id.*; *see* J.A. 370.

We conclude, moreover, that the district court erred in determining that injunctive relief was merited based upon the Ridge plaintiffs' assertions that: (1) TTPS incorrectly stated that the accused door was patented when it instead was the subject of a pending patent application; and (2) Kirk interfered with Ridge's business relationships by sending a letter to Whiting Door threatening royalty damages. *See* J.A. 337–38, 762, 764, 918–19; *see also Second Preliminary Injunction Order*, 2024 WL 4817434, at *2, *3, *12–14. Because the Ridge plaintiffs presented no credible

16                    RIDGE CORP. v. KIRK NATIONALEASE CO.

evidence that such conduct was likely to recur, it is insufficient to support the grant of injunctive relief. *See Murthy v. Missouri*, 603 U.S. 43, 68 (2024) (explaining that "the past is relevant only insofar as it predicts the future" and that "[t]o obtain forward-looking relief, the plaintiffs must establish a substantial risk of future injury that is traceable to the . . . defendants and likely to be redressed by an injunction against them"); *Hess v. Oakland Cnty.*, 174 F.4th 981, 995–96 (6th Cir. 2026) (explaining that preliminary injunctive relief is available to prevent future injury rather than to redress past alleged misconduct).

We therefore conclude that the district court's grant of a preliminary injunction was an abuse of discretion. We have considered the Ridge plaintiffs' remaining arguments but do not find them persuasive.

## III. CONCLUSION

Accordingly, the order of the United States District Court for the Southern District of Ohio granting a preliminary injunction is reversed and the case is remanded for further proceedings consistent with this opinion.

**REVERSED AND REMANDED**

COSTS

The KNL defendants shall have their costs.